UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VANESSA A.,[1] | ) |
| | ) No. 21 CV 6209 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) June 25, 2024 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Vanessa A. seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") asserting she is disabled by bipolar disorder, PTSD, anxiety, and obesity. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for benefits. For the following reasons, Vanessa's remand request is denied, and the Commissioner's decision is affirmed:

**Procedural History**

Vanessa filed applications for DIB and SSI in June 2019, alleging disability onset as of January 9, 2018. (Administrative Record ("A.R.") 15.) Her applications were denied initially and upon reconsideration at the administrative level. (Id. at 66-95, 100-29.) Vanessa then sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 178-202.) She appeared with her attorney

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Vanessa's first name and last initial in this opinion to protect her privacy to the extent possible.

1

at a March 2021 hearing, during which Vanessa and a vocational expert testified. (Id. at 34-65.) The ALJ issued his decision the following month ruling that Vanessa is not disabled. (Id. at 13-24.) The Appeals Counsel denied Vanessa's request for review, (id. at 1-3), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Vanessa then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Vanessa argues that the ALJ erred by failing to: (1) adequately support his step three finding that her mental impairments do not meet or equal listing-level severity; (2) accommodate her paragraph B limitations in his RFC assessment; (3) properly assess opinion evidence; and (4) conduct an analysis of her extreme obesity. (R. 10, Pl.'s Mem. at 7-16.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Yet "[a]ll [that is] require[d] is

2

that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [Claimant] meaningful judicial review.'" *Warnell v. O'Malley,* 97 F. 4th 1050, 1054 (7th Cir. 2024). To warrant reversal, a claimant must do more than "nitpick the ALJ's order." *Morales v. O'Malley*, No. 23-2796, 2024 WL 2794055, at *1 (7th Cir. May 31, 2024). Indeed, a claimant "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record." *Id.* Having considered the arguments and record, the court concludes that remand is not warranted.

A.  **Mental Functioning**

Vanessa argues that the ALJ's conclusion that her mental impairments do not meet or equal listing-level severity has no support. (R. 10, Pl.'s Mem. at 7-10.) The government responds that the ALJ supplied substantial evidence to support his conclusion and Vanessa is merely asking the court to reweigh evidence. (R. 11, Govt.'s Mem. at 2-7.) To establish listings-level severity at step three, a claimant is required to prove she has at least two "marked" restrictions or one "extreme" restriction in the paragraph B criteria. *See* 20 C.F.R. § 404.1520. An ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation" when reviewing a claimant's mental impairments under paragraph B. *Id.* at § 404.1520a(c)(1). And "[a] list of evidence punctuated with a conclusion does not discharge an ALJ's duty to form a logical bridge between the

3

evidence and his conclusion that [the claimant] has no marked limitations." *Pimental v. Astrue*, No. 11 CV 8240, 2013 WL 93173, at *9 (N.D. Ill. Jan. 8, 2023).

Here, the ALJ found that Vanessa's obesity, bipolar disorder, anxiety disorder, and PTSD are "severe" impairments, but they do not cause marked or extreme limitations. (A.R. 16-17.) He evaluated the paragraph B criteria and determined that Vanessa only has a mild limitation in understanding, remembering, or applying information, and moderate limitations in the three remaining functional areas—interacting with others, concentrating, persisting, or maintaining pace ("CPP"), and adapting or managing oneself. (Id.)

Vanessa takes issue with the ALJ's finding of moderate limitations, arguing that the ALJ "relied almost exclusively upon false equivalencies to improperly cancel out significant deficits." (R. 10, Pl.'s Mem. at 7.) The court disagrees. The court is not in a position to reweigh evidence and must simply look to whether the ALJ supported his opinion with substantial evidence. *Morales*, 2024 WL 2794055, at *1 ("[T]ime and time again we have underscored that our role as a court of review is not to 'reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination.'" (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021))). When assessing a moderate limitation in the area of interacting with others, the ALJ recognized Vanessa's bout with paranoia and suicidal ideation in April 2019, (A.R. 16 (citing id. at 1061)), as well as her dysphoric mood and constricted affect, (id. (citing id. at 1019)), but reasoned that Vanessa "exhibited marked improvement in mood, sensorium,

4

alertness, and thinking" with treatment, (id. at 16-17). For example, the ALJ noted that Vanessa was animated at a December 2019 exam, although nervous and fidgety. (Id. at 17 (citing id. at 2218-23).) And he pointed to Vanessa's reports that she had worked as a CNA for five years and was close with her family, "indicating an ability to interact comfortabl[y] with those familiar to her." (Id. (citing id. at 2220-21).) Vanessa argues that "it is unclear how her ability to interact comfortabl[y] with those familiar to her translates into an ability to interact comfortably with those unfamiliar to her," (R. 10, Pl.'s Mem. at 7-8), but the ALJ's RFC precludes joint projects or interaction with the general public, (A.R. 17-18). Substantial evidence therefore supports the ALJ's reasoning.

In finding Vanessa to have a moderate limitation in the area of CPP, the ALJ determined that her anxiety and paranoia "would reasonably affect her ability to concentrate on more than simple tasks," but noted that Vanessa could drive and was able to follow a 3-step command, recall 3/3 objects, and perform "serial 7s" at a mini-mental status exam. (Id. at 17 (citing id. at 1017-19)). Thus, while Vanessa claims that the ALJ relied only on her ability to drive in assessing a moderate limitation, (R. 10, Pl.'s Mem. at 7), she is incorrect.

As for adapting or managing oneself, the ALJ also found Vanessa's limitation to be moderate, acknowledging that Vanessa had lapsed prescriptions and multiple hospitalizations, (A.R. 17 (citing id. at 939-40 (Vanessa's lapsed medications), 1061 (April 2019 hospitalization after reporting paranoia and suicidal ideation), 2237-41 (January 2021 hospitalization after experiencing paranoia and delusions)), but also

5

determining that she has an ability to use coping mechanisms and has insight into her symptoms, such as her decision to avoid technology because it fueled her previous paranoid thoughts, (id. (citing id. at 1984-2216)). The ALJ at least "minimally articulate[d]" his reasoning, and substantial evidence supports his assessment of Vanessa's mental functioning. *Filus*, 694 F.3d at 869.

**B.  RFC**

Vanessa next argues that the ALJ failed to adequately accommodate her paragraph B mental limitations in his RFC analysis. (R. 10, Pl.'s Mem. at 11-13.) Specifically, she takes issue with the ALJ's: (1) failure to "recognize the natural ebbing and flowing of symptoms in the case of chronic mental illness;" and (2) claim that her mental illness correlates with medication changes or non-compliance. (Id.) The government disagrees and argues that the ALJ adequately "explained the reasons for the limitations in the RFC finding." (R. 11, Govt.'s Mem. at 7-10.)

An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ "must incorporate a claimant's limitations," including those that are not severe, when developing the RFC. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (finding that when assessing RFC, ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling").

6

> Here, the ALJ concluded that Vanessa has the RFC to:
>
> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [that she] can understand, remember, and carry out simple job instructions. She can tolerate occasional interaction with coworkers and supervisors, but should not participate in any collaborative joint projects with them or engage the public. No fast-paced work with mandatory numerically strict hourly production quotas, but [she] is able to satisfy end of the day employer expectations.

(A.R. 17-18.)

Vanessa's first contention—that the ALJ ignored the "ebbing and flowing" of chronic mental illnesses—does not require remand. The ALJ discussed Vanessa's symptoms changing during the applicable time period. (Id. at 19-20 (citing id. at 1050 (January 2019 medical note indicating Vanessa was alert and oriented with normal mood and affect and reporting her last time feeling suicidal was 2011), 1061 (April 2019 medical note indicating an increase in paranoia and suicidal ideation), 1351 (April 2019 therapy note reporting improvement with decreased paranoia and denial of self-harm thoughts)).) But the ALJ decided not to incorporate additional limitations in the RFC, reasoning that Vanessa showed improvement with therapy and medication and used coping mechanisms, such as her decision to avoid technology because "she had the insight that it fueled her prior paranoid thoughts." (Id. at 20 (citing id. at 1984-2216).) Further, the ALJ found that Vanessa's conduct at the state agency consultative psychological exam "indicated an ability to occasionally interact with coworkers and supervisors" and the fact that she was comfortable with her family showed "she would be more comfortable with coworkers and supervisors" compared with the public, which was accounted for in the RFC. (Id.) And while

7

Vanessa disagrees with the ALJ's finding that her worsening symptoms or hospitalizations appear to correlate with medication changes or non-compliance, (R. 10, Pl.'s Mem. at 12), the government correctly points out that the ALJ cited multiple instances for support, (R. 11, Govt.'s Mem. at 8-9 (citing A.R. 1292 (April 2019 progress note discussing medication updates), 1367 (April 2019 medical note indicating that Vanessa was discharged from treatment program due to multiple missed sessions), 2313-14 (January 2021 hospital discharge summary noting Vanessa reported that her recent increase in psychosis symptoms occurred after a recent medication change))). Although Vanessa also claims the ALJ erred by only describing a "small handful of treatment visits," (R. 10, Pl.'s Mem. at 11-12), an ALJ need not mention every piece of evidence, *see Gedatus*, 994 F.3d at 901 ("True, the ALJ's summary [of the evidence] does not mention every detail. But it need not.").

Finally, Vanessa contends that the ALJ did not assess her RFC within the context of a full-time work setting. (R. 10, Pl.'s Mem. at 11-12.) But this argument is also without merit. The record does not support an argument that the ALJ was unaware that an RFC requires an assessment of full-time work on a sustained basis. (See A.R. 15 (providing applicable law for assessing RFC)).

**C.    Opinion Evidence**

Vanessa contends that the ALJ also erred by crediting non-examining psychological consultants' opinions and failing to explain his reasons for rejecting treating physician Dr. Jerry Gibbon's opinion. (R. 10, Pl.'s Mem. at 13-14.) Under the applicable regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§

8

404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may, but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

The ALJ found persuasive the state agency consultants' psychological opinions that Vanessa can "maintain concentration and persistence necessary to carry out simple tasks in a typical work environment, interact with supervisors but have only 'limited sustained contact' with coworkers and the general public, and would perform 'more successfully in a consistent work environment with routine tasks." (A.R. 21 (citing id. at 66-80 (state agency psychological opinion at initial level), 81-95 (state agency psychological opinion at initial level), 100-114 (state agency psychological opinion at reconsideration level), 115-29 (state agency psychological opinion at reconsideration level)).) In so finding, the ALJ reasoned that Vanessa was fully oriented at the psychological consultative examination, (id. at 21-22 (citing id. at 2221

9

(December 2019 exam where Vanessa was "well oriented to time, place, sense of self")), and able to sustain simple tasks throughout the day, (id. at 21 (citing id. at 2221 (December 2019 exam where Vanessa reported she can prepare meals, manage hygiene, clean, do laundry, write poetry, draw, and exercise)), and to interact with others, particularly those familiar to her, (id. (citing id. at 1292 (April 2019 progress note indicating that Vanessa "appeared to be comfortable" throughout encounter), 1366 (April 2019 therapy note reporting Vanessa said therapy program was helping her symptoms), 2314 (January 2021 discharge summary noting Vanessa was "calm and cooperative" and "alert and oriented x4"), 2221 (December 2019 exam reporting was close with her family)). Accordingly, substantial evidence supports the ALJ's analysis.

The ALJ also supplied substantial evidence to support his decision to discredit Dr. Gibbon's opinion that Vanessa "would be precluded for 10% of an 8-hour workday in her ability to understand very short and simple instructions, maintain attention and concentration, get along with coworkers, and respond appropriately to changes in the work setting." (Id. at 22 (citing id. at 2398-2401).) Vanessa contends that the ALJ used her daily activities and performance at a mini-mental status exam to demonstrate her ability to sustain full-time work. (R. 10, Pl.'s Mem. at 14.) However, the ALJ merely cited these activities to highlight inconsistencies between Dr. Gibbon's opinion and the record. (A.R. 22. (citing id. at 1017-19 (Vanessa's 30/30 score on her mini-mental health status exam).) While Vanessa disagrees with the ALJ's conclusion and finds it "unconvincing," (R. 10, Pl.'s Mem. at 14), the court is

10

not permitted to reweigh evidence, *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1153 (7th Cir. 2019). The ALJ further reasoned that Dr. Gibbon's opinion is not acceptable because he "fails to articulate an adequate rationale or support" for his opinion and does not rely on any objective evidence. (A.R. 22.) The ALJ here more than minimally articulated his reasons for deeming Dr. Gibbon's opinion unpersuasive. *See also Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record.").

**D.     Obesity**

Lastly, Vanessa argues that the ALJ did not correctly assess her extreme obesity. (R. 10, Pl.'s Mem. at 14-16.) The government responds that the ALJ appropriately recognized that Vanessa had "no specific functional complaints related to obesity" and therefore did not err. (R. 11, Govt.'s Mem. at 10.) Remand is not warranted on this basis because the ALJ in fact discussed her obesity and reduced her exertional level to medium because of it, (A.R. 19-20), and Vanessa provided no evidence supporting additional limitations beyond those already assessed in the RFC to account for her obesity, *see, e.g., Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022) (noting complainant bears burden of proof in showing additional limitations were warranted). Because Vanessa provides no limitations addressing her obesity, the ALJ's alleged failure to analyze her obesity, even if true, cannot justify reversal. *See Jozefyk*, 923 F.3d at 498 (holding that any error in ALJ's RFC assessment was harmless because "[i]t is unclear what kinds of work restrictions might address [claimant]'s limitations"); *see also Laura B. v. Kijakazi*, No. 20 CV 3403, 2023 WL

11

2306938, at *8 (N.D. Ill. March 1, 2023) (concluding that ALJ was "not obligated to consider limitations stemming from this impairment" in part because claimant "fail[ed] to suggest what additional limitations" her condition imposed).

## Conclusion

For the foregoing reasons, Vanessa's remand request is denied, and the Commissioner's final decision is affirmed.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate**